IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATHAN BROWN, #282959, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-443-WHA |
| | ) | [WO] |
| | ) | |
| QUALITY CORRECTIONAL | ) | |
| HEALTHCARE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Nathan
Brown ["Brown"], an indigent inmate, alleging that the defendants acted with deliberate
indifference to his health and safety.  Specifically, Brown asserts that he contracted
tuberculosis from a fellow inmate during a prior period of incarceration at the Montgomery
County Detention Facility because the facility's screening and control procedures for
infectious diseases were constitutionally inadequate.  Brown names Quality Correctional
Healthcare, Inc. ["QCHC"], Dr. Jerry Gurley, and Dr. Johnney Bates as defendants in this
cause of action.  Brown seeks declaratory relief and monetary damages for the alleged
violation of his constitutional rights.

The defendants filed an answer, special report, and supporting evidentiary materials,

including affidavits and certified medical records, addressing Brown's deliberate indifference claim. The court thereafter informed Brown that the defendants' special report may, at a future time, be treated as a motion for summary judgment and explained to Brown the proper manner in which to respond to a motion for summary judgment. *June 26, 2012 Order - Doc. No. 13*. Brown filed his response to the defendants' report on July 23, 2012.

Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'\"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-- now dispute --] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.* "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current version of the rule.

undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact

exists when the nonmoving party produces evidence that would allow a reasonable fact-

finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.  In respect to the latter, our inferences must accord
> deference to the views of [and medical personnel].  Unless a prisoner can
> point to sufficient evidence regarding such issues of judgment to allow him
> to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendants' properly supported motion for

summary judgment, Brown is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claim of a constitutional violation.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil*

*Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ...

or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the [trier of fact] could reasonably find for that

party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine dispute

of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").   Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.   *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant.

*United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275,

6

1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Brown fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION[2]

Brown was arrested on September 28, 2010 and placed in the Montgomery County Detention Facility. He complains that upon his placement in the jail he "was not screened

---

[2]The record does not establish whether Brown was a pre-trial detainee or convicted inmate during the period of time that the alleged constitutional violation made the basis of the instant complaint occurred. Regardless of Brown's status in the jail, either as a pre-trial detainee or a convicted inmate, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

by Quality Healthcare and [was] placed in a diseased environment." *Complaint - Doc. No. 1* at 3. Brown alleges that due to the foregoing he contracted tuberculosis while confined in the Montgomery County Detention Facility. *Id*. The defendants deny that they acted with deliberate indifference to Brown's health.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice--negligence by a physician--is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that

8

deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, defendant must know of and then disregard an excessive risk to prisoner's health or safety). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d

164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'  *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'  *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").  Moreover, "as *Estelle* teaches, whether

10

government actors should have employed additional diagnostic techniques ... 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of diagnosis does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

The evidentiary materials filed by the defendants address the allegations made by Brown. A thorough review of these documents demonstrates that the affidavits submitted by the defendants are corroborated by the objective records compiled contemporaneously with the screening of Brown and the treatment provided to him after his skin test showed a positive result for tuberculosis. The records establish that Brown underwent initial screening by both a correctional officer and an emergency medical technician. *Defendants' Exhibit 5 - Doc. No. 12-5* at 12-13. Brown advised the correctional officer that he did not

suffer from tuberculosis. *Id*. at 13; *Defendants' Exhibit 7 - Doc. No. 12-7* at 24. The medical technician completed a "QCHC Initial Health Assessment" which included taking Brown's vital signs and documenting his medical history. *Defendants' Exhibit 5 - Doc. No. 12-5* at 12. Brown did not exhibit any symptoms of tuberculosis at this time nor did he complain of suffering from any such symptoms. *Id*. Additionally, Brown completed an initial "Medical Questionnaire for Tuberculosis" in which he advised that he suffered no symptoms associated with tuberculosis, had never been told he had tuberculosis, and had never tested positive for this disease. *Defendants' Exhibit 7 - Doc. No. 12-7* at 27. A member of the jail's medical staff reviewed Brown's health assessment and determined that he exhibited no condition which prevented his assignment to the general population of the jail. *Defendants' Exhibit 5 - Doc. No. 12-5* at 15.

Dr. Bates responds to the claims presented by Brown as follows:

> QCHC strictly adheres to the guidelines and recommendations of the Center For Disease Control (CDC) in the prevention and control of tuberculosis (TB)....
>
> The [CDC] guidelines were followed in the case of the Plaintiff, Mr. Brown. When he was first incarcerated he went through a screening assessment as recommended by CDC. At the time of his admission, there had been no prior cases of TB in the Montgomery County Detention Facility. It would therefore be characterized as a minimal risk facility.
>
> On November 15, 2011, Mr. Brown had a positive TB Skin Test. [After additional testing], he was diagnosed as having latent TB, which is not exactly like having TB. [Latent TB] only means prior exposure to TB. He could have been exposed at any time by anyone. The exposure could have come prior to his being incarcerated at MCDF. There is no way to know for sure when the exposure occurred.

In his complaint, Mr. Brown referred to another inmate in MCDF who had TB.  That particular inmate has Scrofula, which is not transmissible.  TB is only transmissible via airborne droplets.

In his complaint, Mr. Brown refers to MCDF as a "diseased facility". That simply is not true.  As stated earlier, because of its lack of TB cases, the facility is categorized [under CDC guidelines] as a minimal risk facility.

Since the positive TB screen, Mr. Brown has been treated appropriately [in accordance] with the CDC recommendations and standards promulgated by the Alabama Department of Public Health.

*Defendants' Exhibit1 - Doc. No. 12-1* at 1-2.

The affidavit filed by Dr. Gurley provides the following explanation of actions taken

upon Brown's placement in the Montgomery County Detention Facility and the treatment

provided when Brown complained of symptoms associated with tuberculosis.

The Plaintiff, Mr. Brown, underwent a medical screening intake on September 20, 2010. The only medical problem[] noted at that time was hypertension. His weight at that time was 176 pounds and his TB questionnaire was negative. This screening intake was reviewed by Dr. Bates.

Other than the claim set forth in Mr. Brown's Complaint, his medical history at MCDF was largely unremarkable. He was treated for his hypertension and on December 7, 2010 he was treated for a hurt shoulder due to an altercation with another inmate.

On November 15, 2011, a skin test was performed by the Alabama Department of Public Health TB Clinic personnel. His positive TB Skin Test was 17mm, which was read on November 17, 2011. The test was administered after another inmate had been suspected of having TB.  At the time of the skin test [Brown] was complaining of losing weight and coughing up blood, but there had been no previous sick calls placed and no encounters whatsoever [with medical personnel] to document his then complaints.  Dr. Bates was notified and he placed the inmate in a negative pressure cell in the infirmary and ordered a chest x-ray.  [Dr. Bates] followed the standard TB protocol established by CDC and the Alabama Department of Public Health.

Subsequent to the positive skin test the Alabama Department of Public

Health TB Clinic conducted cultures, sputums, smears, and chest x-rays that were all found to be negative for the acid-fast bacillis (TB germ).  All other tests were normal, including enzymes and HIV test, which was non-reactive. [Brown] was started on an established protocol of INH and B6.  After all the tests were found to be negative, [Brown] was moved back to general population on November 30, 2011.  He had no problems whatsoever while in the infirmary and while the evaluation was ongoing.

I saw Mr. Brown again on December 23, 2011, for a sick call. He was complaining of a lump in his throat and said he had spit up orange spit.  His throat was red and swollen on the right side.  There was some post nasal drainage.  There was no blood seen and his ears were normal.  His chest was clear and he was treated appropriately for an upper respiratory infection.

Mr. Brown had his annual health assessment by the nursing staff on January 13, 2012, and was found to be perfectly normal, with a weight of 168.  He was seen for a chronic care visit on February 2, 2012.  He was still complaining of a lump on the right side of his throat.  The evaluation of his throat was normal.  His blood pressure was elevated and his blood pressure medicine was increased and an additional blood pressure medicine was ordered along with labs and a thyroid profile.  These were all negative or normal.  [Brown] continued on blood pressure medicine and medicine ordered by the Alabama Department of Public Health, which was administered by nursing staff at the MCDF.

Mr. Brown has received all care required by established protocols, both for his general medical care and his positive skin test.  The positive skin test with all other findings being negative is indicative of latent TB, which is not contagious, and which is a reaction to the TB germ which is in the body in an inactive state.  There is no way to establish when the inmate had contact with the TB germ, which would have given him a positive TB test.  His [screening and] treatment [were] by standard, acceptable protocol established by QCHC in accordance with guidelines established by the CDC and the Alabama Department of Public Health.

*Defendants' Exhibit 2 - Doc. No. 12-2* at 1-3.

Under the circumstances of this case, it is clear that the course of action undertaken by the defendants did not violate Brown's constitutional rights, as it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the

fundamental fairness." *Harris*, 941 F.2d at 1505.  Although Brown alleges that the defendants should have acted in a different manner with respect to screening inmates for tuberculosis upon their entry into the jail, this assertion, without more, fails to establish deliberate indifference.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which to address a situation fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical assessment does not constitute deliberate indifference in violation of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that the defendants took precautionary measures in accordance with their professional judgment and pursuant to the guidelines established by the Centers for Disease Control in an effort to (i) identify inmates with tuberculosis upon initial intake into the jail, (ii) protect the inmate population from possible exposure to a potential infectious disease, and (iii) ascertain whether Brown had contracted the disease.  The defendants also provided all necessary and appropriate treatment to Brown upon his complaints indicating possible exposure to tuberculosis.  Based on well-settled law cited herein, Brown's mere

desire for a different protocol does not amount to deliberate indifference. In addition, Brown has failed to present any evidence which indicates that the defendants knew that the manner in which they conducted the screening procedure or treated inmates created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Brown's health or safety. Consequently, summary judgment is due to be granted in favor of the defendants. *Carter*, 352 F.3d at 1350.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. No costs be taxed herein.

It is further

ORDERED that on or before June 17, 2014, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this

Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 3rd day of June, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE